## ALDER v. CONSUMERS CO.

### No. 8731.

Circuit Court of Appeals, Seventh Circuit.

Dec. 20, 1945.

---

5 Quoted in footnote 3, supra.

George E. Q. Johnson, Walter E. Wiles, and Wallace S. Schall, all of Chicago, Ill. (Herman Barrington, of Chicago, Ill., of counsel), for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Plaintiff, formerly a salesman employed by defendant, recovered a $25,284.43 judgment for commissions he allegedly earned in the sale of building materials. The trial was by the court, and the judgment is supported by specific and detailed findings and conclusions.

The controversy is largely over two issues. Was plaintiff the procuring cause of the sales on which he seeks commissions? Is he estopped to claim such commissions because of endorsements on his monthly checks?

Alder entered the employ of defendant in July, 1938,[1] and the employment terminated in October, 1943. He had been the president of another building material company before entering defendant's employ.

The commissions involved cover the period subsequent to June 1, 1942. At that time plaintiff was offered an annual salary of $10,000, in lieu of commissions. He refused this offer. The president of defendant then stated plaintiff would receive no further commissions on Portland cement.

From February, 1942 to September, 1943, plaintiff's pay checks bore this printed endorsement:

"The endorsement of this check by payee guarantees acceptance of it in full settlement of the account as stated in voucher bearing corresponding check number."

Defendant argues,—Plaintiff was not the procuring cause of the sales upon which he claims commissions.[2]

A consideration of the evidence bearing on these two issues provokes several other questions factual in nature, one of which

Campbell, Clithero & Fischer, of Chicago, Ill., for appellant.

Delbert A. Clithero and Carlton L. Fischer, both of Chicago, Ill., for appellant.

[1] On August 22, 1939, an officer of defendant issued a memorandum as to plaintiff's commissions which provided for the "usual 2¾% on all aggregates and bulk materials, including Portland cement. * * * Brick sold to the Lincoln School and pending sale to the Brownell School, $1.50 per M. * * *."

Alder was on a salary basis of $225 a month from October, 1940 to February, 1941, while doing a special piece of company work.

[2] It objects to three groups: (a) commissions on sales requiring approval of government representative; (b) where a competitor was unable to fill order and defendant was only available source of material; (c) where defendant's permitting Defense Plant Corporation to take possession of land before order was a vital force in obtaining sale.

is the action of the defendant's sales manager and defendant's failure to call him as a witness, when his testimony would have been clarifying and important.

At the close of the trial the judge announced his opinion. He believed plaintiff's testimony in its entirety. He did not believe defendant's witness S. to be entirely reliable. He found the principal issues to be whether or not plaintiff was the "procuring cause" of the orders, and second, whether there had been an accord and satisfaction.

On the question of "procuring cause" he concluded:

"No matter what thought there may be in the mind of the court otherwise, the plain record is that the parties interpreted their own contract, and that the defendant up until the first of June, 1942, admitted that the plaintiff was the procuring cause of all this business; and under that admission they could not change the relationship of the parties afterwards by any unilateral statement * * * by the president of the company simply announcing, 'We are going to cut you off; we will pay you no more commissions,' because he would be destroying a property right without the consent of the opposite party to the transaction. That conversation in June had absolutely no legal effect of any kind that I can see."

As to the matter of settlement he stated:

"As to the matter of accord and satisfaction, these vouchers, or whatever name it is that you call them by, that are attached to the checks, the statements of what is being paid for, do not amount to an accord and satisfaction as a matter of law. The checks purport to pay for the items specified in the exhibits; they do not purport in any way to bar any other claim that may exist between the parties. When it came down to the point of attempting to place a bar in the record by any endorsement stating that it was in full of everything, the plaintiff very promptly refused to accept it and turned it back."

The court also commented:

"For some mysterious reason unknown to the court, the defendant in this case has not called as a witness, their own former vice president, Mr. Hock. * * * If Mr. Alder's testimony * * * was not sound or reliable, or if there was any thing false about it, Mr. Hock could so testify. * * * I gathered from the remarks of counsel and from the course that the case has taken, that the defendant company felt that Mr. Hock was not the right kind of a manager and perhaps that he was too liberal with Mr. Alder."

A reading of the evidence discloses a serious conflict. There is uncertainty and doubt, as well as serious conflict over just what plaintiff's relations with defendant after June 1, 1942, were. The sales of cement were large but a reduction in the price to the customer lowered the profit, so that defendant felt there should be an elimination of all commissions to plaintiff and a flat salary of $10,000 a year substituted. Plaintiff, on the other hand, felt that he had been the instigating cause of these large sales and opposed the reduction in the price of the product. He believed that ensuing deliveries, pursuant to initial orders, gave him a valid claim to commissions on all such deliveries. He testified he made daily contact, in many instances, with the customer, pushed deliveries to the customer, and in general smoothed relations between consumer and seller.

We are not impressed, as a negativing factor to plaintiff's procurement of the Defense Plant Corporation sales, with the argument that the Government agent had to approve the sales. The Government agent testified that the approval was simply of quality of merchandise, but that price was according to lowness of bids, the quality factor being equal.

As to the Duffy transaction, the evidence is conflicting as to whether the sale was due solely to Hummel's efforts or whether Hummel relinquished the transaction to plaintiff, who clinched and serviced the deal.

Like the District Judge, we too are curious as to why Mr. Hock did not testify. He was an officer of defendant company, the superior of plaintiff. It was he who authorized plaintiff's commissions, and in general supervised his transactions. He would have been able to clarify all the details. Ordinarily, his acts bound the company, and we must conclude they do here.

In the face of the fact that plaintiff continuously and consistently maintained his position relative to the right to commissions on cement, defendant can not be relieved of the effect of the payments of commissions thereafter, or the inference to be drawn therefrom.

Very important we feel, was plaintiff's refusal to accept a check in November, 1942, which bore the statement on the back of the voucher "Payment of commissions in full to date." All other checks carried the endorsement above set forth. Plaintiff refused the check, and was given one with the restricted endorsement.

Another serious conflict in the evidence arises on the "O'Neil" transaction wherein the trial court awarded plaintiff commissions of $4,227.69, and interest. Plaintiff and Schlegel, another of defendant's salesmen, called frequently on this account, and Schlegel sent in many sales slips.

Despite the sharp conflict in the evidence, there is substantial testimony to support the trial court's determination in favor of plaintiff.

■ Three comparatively small items, that of customers Goss, Griffiths, and Paschen, also involved a conflict in the evidence between plaintiff and Schlegel. Both testified they procured the sales. That issue resolves itself into one of credibility of the respective witnesses.

As to the Defense Plant Corporation transaction at McCook, plaintiff recovered $12,854.24 commissions. Defendant maintains the sale was not at all due to plaintiff's efforts, but to these facts: it owned the land upon which the plant was erected; its source of supply, its quarry, was close by; its prior efficient service to the contractors; the president of defendant and Albert Hock and his father, were personally handling the transaction. Several of the sales were made, defendant urges, after the dispute over commissions arose; also, the trial court excluded evidence that defendant realized less than one-half of one per cent. gross on the cement sales. There is also a dispute over commissions for sales of paving brick to the Defense Plant Corporation, whereon the trial court granted plaintiff commissions totaling $4,408.50, at the rate of $1.50 per thousand. Defendant argues that the only time plaintiff received commissions on brick was on the specific school buildings mentioned in the original memorandum stating commission rates. Defendant had been low bidder on the paving brick item and received its order September 2, 1942.

On the other hand, the testimony was abundant as to plaintiff's procurement of this contract, his constant attention to the deal and payment of some commissions on this deal. We are unable to say that there was not the requisite quantum of proof to support the trial court's finding in plaintiff's behalf.

■■ Both counsel have cited numerous and apt authorities in support of their respective positions. But the issue becomes very narrow, and predominately factual. Was there substantial evidence to support the trial court's findings that plaintiff was the procuring cause of the sales? We cannot escape the conclusion that there was support for it. Defendant's suggestion that its vice-president and sales manager, Hock, betrayed it is about the only basis it has for challenging the court's findings. The court called on defendant to produce Hock and examine him. Defendant refused to do so but suggested the court call him, at the same time refusing to be bound by his testimony. It was defendant's duty to disprove Hock's authority. The court could not find him false to his trust without some evidence. As the record stands we must assume he acted within his authority and bound his principal.

As to the defense of accord and satisfaction by the acceptance of the checks so indorsed we are persuaded that plaintiff had no intention to satisfy his entire claim and defendant was well aware of it at all times. Throughout all the discussions plaintiff protested. He refused to cash a check specifically stating it covered a payment "in full," so as to make out a case of estoppel against him.

■■ One of the essentials of an accord and satisfaction is an assent or meeting of the minds of the parties. The whole tenor of the evidence in this case is a refutation of any theory that plaintiff and his employer ever arrived at any agreement. When the defendant sought an acceptance of a partial payment as a payment in full of all commissions to date, with appropriate endorsement, plaintiff balked and he then received a check with the indorsement of payment in full "of the account as stated in voucher bearing corresponding check number." Plaintiff also turned down a $10,000 a year salary offer in lieu of continuing commissions. In these facts we find no evidence of accord and satisfaction.

■ Finally, defendant complains of the allowance of interest for the Illinois statute permits interest only where money is "withheld by an unreasonable and vexatious delay of payment." Ill.Rev.Stat.1945,

700

c. 74, § 2. It argues there was no such unreasonable and vexatious delay in the instant case. This suit was begun in December of 1943, subsequent to the termination of employment in October, 1943, for commissions accruing after June 1, 1942. In view of the plausible defenses raised by the defendant we are not able to say there was "unreasonableness" or "vexatiousness" in the delay in the payment of the money. We eliminate the interest item from said judgment.

As so modified, the judgment is affirmed.